Case number 19-5499. Tamila Nethery v. Quality Care Investors LP. Oral argument not to exceed 15 minutes per side. Mr. Braun, you may proceed for the appellant. Thank you, Your Honor. Richard Braun for the appellant, Nethery. May it please the Court, I'd like to reserve five minutes to rebuttal. There are two issues in this case. First, whether Plaintiff Nethery fits under this Court's precedent in Stouder Memorial Hospital. And the second is whether or not the defendant is a joint employer of Plaintiff Nethery. In both cases, the District Court either ignored or dismissed this case, this circuit's relevant precedent. And on the joint employment issue, cited a Tenth Circuit case that wasn't cited by any of the parties in the District Court. First, let me talk about the Christopher v. Stouder interference with employment opportunities issue. The defendant is asking this Court to essentially overrule Stouder, which this Court should decline to do. The defendant asked the point to... Can I ask you, I'm sorry, can I interrupt you, sir? Yes. Sorry to interrupt you. This is Judge Tappara. I just have a quick question about Stouder. So that case involved a hospital taking action, you'll recall, which prohibited the nurse from working with the doctors, in essence. And what I don't understand here, the analogy would be quality care is taking action that interferes your client, Nethery, from working with someone else. Who is the third party that she would be working with other than quality care? Reliant, which was her direct employer. She was employed by Reliant. But you didn't sue Reliant for interference with a third party. So what you're suing is quality care for interfering with a third party. And what I'm trying to understand... Yeah, we settled with a third party. Okay, that's fine. So what I'm trying to understand is whose employment relationship was quality care interfering with? Are you alleging hers with Reliant? Because they didn't stop her working with Reliant. No, but that's what I did. She was employed in that facility, and when quality care told her she could not enter that facility, it's the same as Stouder saying, you can't work in our facility, you can't use our equipment, you can't have access to our patients. But that prevented the nurse in Stouder from doing her job. Whereas here, your client, and it's undisputed, your client was offered another position, so she could do her job. I agree with you it's far away, but I guess my question is why? This doesn't seem on all squares to Stouder. It is because there may have been other hospitals in the area where Stouder was with other doctors with privileges at other hospitals. So it only interfered with her ability to work for these doctors at Stouder. So I think it is a parallel. And the defendants effectively recognized the parallel and asked this court to essentially overrule Stouder and claim that this court's opinion in EEOC v. Shaw effectively overruled Stouder. And they say that Stouder and joint employment are competing theories. But another panel of this court in Satterfield, Tennessee, in 4-0-6, talked about three separate theories, not competing theories. And I think it would be inappropriate for this court to overrule Stouder in any effect because one panel shouldn't be overruling another panel's opinion. In any event, the district court did not talk about the differences between the Stouder case and our case. Other than to say the structure was different because Reliant was simply a vendor. But the district court did admit a pattern of removal of Reliant employees, which provided the equipment, the keypad, the access, the location, and the patients. The quality care was not simply a consumer of Reliant services. Quality care was a conduit for my client to access patients. Let me turn to the joint employment issue. Yes. Hello? Hello? I can hear you. Can others not? No. Keep going. We can hear you. Okay. On the joint employment issue, the district court totally ignored this court's precedent in EEOC v. Ganska and used a 10th Circuit analysis. When district courts use law outside the circuit when there is relevant 6th Circuit precedent, I think it makes it very, very difficult for this court to analyze. This court in Ganska said that coordination, control, and the right to remove were seminal issues in the court's finding of the joint employment of the plaintiff. In our case, we have a contract between Reliant and Quality Care, part of which says the facility that is Quality Care shall retain administrative and professional responsibility for control over and supervision of the provision of services rendered to patients in all respects as required by law. The district court also ignored many of the facts, such as the fact that Nethery had to wear Quality Care's name tags, so they held her out as an employee. They applied their drug testing policies to Nethery. The services were provided to Quality Care's patients, not to Quality Care. The administrator claimed to another employee of Reliant that she had the power to hire and fire, which should be an admission under Federal Rule 802-D2, which the district court just totally dismissed. There was evidence that Quality Care investigated the plaintiff's performance when she allegedly failed to answer a call light of a patient. The defendant at Reliant had morning meetings in which they coordinated care, and the district court, Quality Care denied any coordination. Now, in this court, they admitted, which the district court never got an opportunity to see, and the district court accepted the denial of coordination. The district court said that removal from the work site was not discipline sufficient to qualify as discipline. But under Burlington Northern, any act sufficient to dissuade a reasonable employee from protected care or protected activity constitutes sufficient discipline. The district court just kind of blew it on that issue, as well as the district court concluding that you could only draw inferences in favor of the plaintiff from undisputed facts. I think the district court's analysis of choosing a Tenth Circuit case instead of this court's president is totally flawed, and one that this court should not condone or affirm.  Counsel, I just wanted to let you know you're going into your rebuttal time now. It's up to you. No, I've stopped. Okay. Thank you. Thank you. Mr. Kreider, when ready. Good morning. Thank you, ma'am. May it please the court, my name is Marcus Kreider, and I represent the Respondent Quality Care, the appellee, and I'm pleased to be able to participate in the oral argument this morning. I'd like to start with the Christopher case and correct Mr. Braun's statements and criticisms about the lower courts, as he called it, ignoring Christopher. I'd like to start with the fundamental principle that regardless of which analysis this court believes is appropriate for determining joint employment, the court's decision to grant summary judgment in favor of quality care is absolutely correct. This case turns on the facts, not necessarily the application of a common law theory or an effects employment opportunities theory under any theory at all articulated under Christopher, under the Skanska case that I'll come back to, under any of them. The facts are overwhelmingly in favor of the summary judgment finding in favor of quality care. Ms. Nethery's reliance on Christopher is fundamentally misplaced because for the point that you articulated earlier, your honor, when you were questioning Mr. Braun, it was the defendant in the Christopher case and not the plaintiff's employer who made the decision that prevented the plaintiff from continuing her employment with the employer. And it is undisputed that reliance alone made every decision affecting Nethery's employment and that quality care had no such authority or involvement. The district court... I'm sorry, your honor, your last point was that quality care did what with respect to her working there? I'm not sure whether you're saying that the real focus is on the fact that it was reliance that terminated Nethery's employment and that the rest of it is unimportant, that it's not important that the reason her employment was terminated was that no one didn't want her working at quality. Well, I think the differences between the cases that have been spoken about this morning actually are overwhelming. The undisputed set of facts in our case, even when taken in the light most favorable to the plaintiff, is that Ms. Mullins said that there were three employees that she was frustrated by in terms of their lack of cooperation when she was attempting to look into an allegation of harassment by a reliant employee because she wasn't getting the information that she needed. It was reliance's decision to remove Ms. Nethery pursuant to a bargain for exchange and negotiated severance agreement where she was paid a lot of money negotiated with her counsel. Reliance didn't choose to remove the other two people about whom Ms. Mullins expressed equal frustration for lack of cooperation. I think that is, taken in the light most favorable to the plaintiff, all that happened here was Ms. Mullins said that because of the lack of cooperation, she did not believe Ms. Nethery to be a good fit at her facility. That's it. Reliance and Quality Care, with no hesitation, both say it was reliance's decision to remove her from the workplace. This is just a catch-all there. Let me ask a question at this point. Did reliance removing her from Quality Care terminate her employment? It didn't have to. Her employment, your honor, was only terminated because Ms. Nethery agreed to terminate her employment with Reliance in exchange for a payment of money. In her relationship with Reliance, did she have any right to determine where she would be working? In other words, could she demand from Reliance when she was working with them and they placed her somewhere? Could she have said, no, no, I'm not going there. I want to be placed in some other place and if you don't, that's an adverse employment action? Well, here's what the record is very clear on. Reliance interviewed, hired, selected Ms. Nethery to work for them. Reliance determined... Malcolm, I want to hear the answer to Judge Batchelder's question. Can you answer her question? Well, we've got to get the question clear because my concern is the record is clear that it was Reliance who hired her and it was Reliance who placed her, but in her employment relationship with Reliance, did she have any right to insist on a particular placement? I don't think the record has any evidence of her right to decline the placement here or anywhere else. I don't think that's in the record whatsoever. Reliance had relationships with other healthcare facilities and what is in the record is there was an opportunity that was provided to Ms. Nethery to transfer to another Reliance facility and she didn't want that transfer because it was further from her home and ultimately that led to those parties to work out an agreement. Is there also... Go ahead. I think the fundamental answer to that, Your Honor, is an adverse action by whom and an adverse action that didn't occur. That was not an adverse action that Quality Care took. I mean, that's why Reliance... Counsel, I'll get to that in a second, but can you answer the first two questions just so I know. Is the fact, just assume for me, let's skip to the joint employer. Assume they're joint employers. If that's the case, and it's a hypothetical obviously, if that's the case, was her transfer such that she would have had to move? And the second question is, if that is the case, then do you have to deal with the adverse action cases out of our circuit? I don't think we have to consider... I think there were several... I think the record is clear that there were several opportunities presented to... in the discussions between Reliance and Ms. Nethery. Where is that in the record? Is it in someone's composition? I can go look if you tell me where it is. Let me see if I can find a reference to the discussions. Let's see. That's all right. I'll look. I just wanted to add a question. Wasn't there also evidence that those other options were owned by Quality Care and therefore Reliance didn't feel like they could place her there? Yes. It is... If the defendant or the representative from Reliance, Ms. Gorgeous, was very clear on this point, that she was the person that decided that we're not going to place Ms. Nethery at the Lebanon facility any longer. The assumption that another Quality Care facility was out of the question was an assumption on Ms. Gorgeous' part. And then the other two options were the transfer to the other Reliance facility that you all have pointed out. If she says it was too far, that was declined. And then ultimately they worked out a mutual settlement agreement. What would be an interesting situation here is if Ms. Nethery would say, no, I'm going to continue to work at the Lebanon facility and if Reliance had said, we're going to not remove Ms. Nethery like the other two employees that you expressed frustration by, Quality Care had no contractual ability to do anything about that. And that's what's so significant between the difference in our case and the Skanska case, for example. Mr. Braun, in his reply brief, criticized Respondent Appley, as well as the District Court, for ignoring what he called a case with significant factual similarities. And I would like to distinguish all of the factual differences between Skanska and this case. In the Skanska case, Skanska actually had a contractual right to remove one of C1's employees. In the Skanska case, the court emphasized greatly the fact that C1 was essentially a non-entity at the workplace. In our case, the on-site rehab director that Ms. Nethery reported to was on-site every day. He dictated all of the responsibilities and work assignments, judged her performance, and he, I would like to point out, was the alleged harasser making inappropriate comments to Ms. Nethery in the subject of the complaint. Contrast that with Skanska. Skanska employees were responsible for making the alleged inappropriate racial comments in the Skanska case. The difference between Skanska and the facts of this case are significant. Overwhelming. Now, can I ask you actually two questions? One is, is determining whether someone is a joint employer a question of law, a question of facts, or a mixed question of law and facts? I believe it is a question of law, and it's clear in this, the precedent's clear that Title VII doesn't apply to independent contractors. We know that for sure. I understand that. I'm asking the joint employer question. So, if it's a question of law, what case, I couldn't find a case that said it's a question of law. What case do you have for that proposition, if any? I can't cite a case, Your Honor, that says it's a question of law. I think it's probably more a question of, a mixed question of law and facts. Wait, so then I have a follow-up question. The district court, one thing that puzzled me is Ms. Mullins said she could hire or fire anyone she wanted, and the district court just said, it said in response, the defendant correctly argues Ms. Mullins alleged statements are not evidence. Why aren't they evidence that the defendant had authority to hire or fire Reliance employees? Well, setting aside the fact that she disputes it, so assuming that the allegation is true, it's correct. It doesn't mean that it's true. There was no hiring and firing. I don't understand. Isn't it evidence? It's an agent statement. Why wouldn't it be evidence? It would be circumstantial evidence, and maybe it's not, quote-unquote, enough evidence to show a joint employer, but why wouldn't it be evidence? It doesn't create a material dispute of fact. It is a piece of evidence that a court should consider in weighing all of the facts as to who actually controls the terms and conditions of employment. Wait, counsel, so you agree it's evidence, but the district court erred when it said it's not evidence. Well, I don't know, and I don't have the opinion right in front of me, I don't know that the district court ignored it. Perhaps the better statement was amidst the mountain of evidence that demonstrates undisputedly that Quality Care did not make the decision at issue here, and all of the ways in which Reliant controlled every single aspect of the terms and conditions of Ms. Nethery's employment, this allegation that Ms. Mullins denied making is insufficient, and no reasonable jury could possibly find that a general common statement not specific to Ms. Nethery weighed against both Reliant and Quality Care, saying she did not make the decision, we made the decision, the fact is immaterial and cannot move the needle. Counsel, hypothetically, let's say she was working there for a number of years, everything was fine, and then a new supervisor comes in, or a new person at Quality who's managing the facility, and that person tells Reliant that that person who's a man inferiorly makes complaints about all the physical therapists who happen to be women, and eventually all the women are gone, because of the complaints and the passive message that the new male manager is sending. That also would not create any liability? I can say this, Your Honor, it's an interesting hypothetical, it is not what turned the Skanska case, where it was clear they actually had authority and exercised it. So I think that case, Your Honor, that you've articulated would depend on whether the supposition, the assumptions, the speculation that what connection really was there between any of the separations and this stray remark or comment about... Okay, let me make it really clear. The person who's now in charge tells Reliant, I don't want you to send any women physical therapists. I think that statement would... I'm trying to envision the hypothetical. So some therapist lost her job for whatever reason, and we have this comment that the Quality Care new supervisor has animus that he has now expressed about women in general. I would think it would be like any other individual employment discrimination case, Your Honor, where we analyze whether that's a stray remark, how much evidence... What is the legitimate non-discriminatory reason? Okay, but Joseph, I'm asking you a different question. In this hypothetical, that's what he said and that's what he meant, and that is the only reason the female was fired. But the issue isn't the causation. It's whether it's a joint employer or whether it satisfies the effective employment standard. Well, I think it would certainly be closer towards satisfying the effects employment standard than it would be the articulation of the elements that go into the common law factors that are set forth in the more recent cases like the Shaw case. Okay. I think your time is up. Thank you very much. Thank you very much. Mr. Braun, you may proceed with your rebuttal. You ready for rebuttal? Yes. You may proceed. Thank you, Your Honors. May it please the court. There are two... There's a... It is disputed what... how Nethery got barred from this facility. Only quality care has the right to bar the plaintiff from this facility. Counsel? Counsel? Counsel? Yes, Your Honor. Can you give me the best facts, actual facts that support that it's a joint employer, so under the ability to hire, fire, all those things, get the plan. What are your best facts, and where do they come from? All right. The best facts are in the therapy services agreement, which gives quality care the right to control the professional services being provided as well as all the administration. But that's always true. Counsel, hold on. That fact, right, that fact's always true. When one company provides employees to another, that's always true. That's... Yeah, but here's the period in a contract, which is document 46.5, page ID 608. Then you have the issue contested on the right to hire and fire. Then you have the plaintiff having to wear the defendant's name tag, which identifies her as the defendant's employer. Why does the name... Counsel, why would the name tag matter? I mean, the name tag's just standard practice. When you loan contract employees to another company, they don't come in and wear a contract. Usually they'll wear their own name tag, the company's name tag. Yeah. Can I ask you a question about the hire and fire? Because what your friend on the other side said is that, look, yeah, she might have made a one-off comment, but we know she didn't have the authority to hire and fire because only Reliant had that authority, and that there were two other employees she complained about that Reliant left there at Quality Care. So that proves... We don't know what happened to those employees, not on the record, who they were or whether they stayed or went. And the district court recognized a pattern of employees who were barred from the facility. There are two deposition records on that issue. The Reliant deposition at page 95 and 870.71, one was on transferring to another facility owned by related companies, where Reliant said the transfer was certainly discussed and we thought it was best that she not go to another Quality Care. So there's that kind of showing a joint decision on where people could or couldn't go. And another reference at page 870.71, where Reliant said that Mullins was not happy and talked about individuals conspiring who are not team players. And she didn't want people who weren't, quote, team players in her facility, so it's disputed who made the decision to bar Plain of Nethery from the facility necessary to do her job. And the only other potential was to transfer to a distant facility, which is disciplined in an adverse employment action under this court's decision in client A. Can I ask you a question? What happens in a case where a company says, we're not happy? So companies, A, hear Quality Care is paying company B Reliant for employees. They say, we're not happy with John Doe. John's a bad guy. We don't want him in any of our facilities. What is Reliant is obviously going to adhere to that, but it doesn't make them a joint employer. That's the way normal contract of loaning employees work, right? And so it's happenstance here. They're not transferring her to a faraway location because they're taking it. Reliant's not because of any animus. They're doing it because Quality Care doesn't want her at their facilities. Right? That's correct. Doesn't that happen all the time in these types of relationships where you loan employees and they say, this person's sleepy, this person's act. That doesn't make them a joint employer. It makes them someone in a contract for employees saying, I don't like these three. Send them somewhere else. But in those types of situations, they're covered as an employment agency under Title VII. They're covered under Title VII, but not from the recipient company, just under the sending company. In other words, the recipient company. So what do you do in that situation? You look for the person who made the decision, who essentially took the adverse employment action. And do you have a case that says that's enough? Do you have a case that says that's enough? Not for joint employer, but for access to employment, which is the other theory. If I bar somebody from my facility because he's black, because she's a woman, because she did a protected activity, Title VII is a broad remedial measure that should be interpreted broadly, which the district courts failed to do. Okay. Does anyone have any further questions? I do not. I do not. Thank you, Judge White. Thank you. Counsel, thank you. I know this is an awkward vehicle, but I think it worked. Thank you. Thank you so much. Counsel, at this time, can you please disconnect? We will do so. Thank you. Thank you. Cassidy, can you please confirm when the attorneys have disconnected? This is to confirm that attorneys have disconnected. Thank you. Your Honors, if you need to contact the operator, in case you can't hear one of your colleagues or any other questions, you would dial star zero at this time. You are placed in a conference with just yourselves. We will disconnect after I finish, and they'll let you know. The operator will let you know if everyone's still on the line or someone's been disconnected if you do the star zero. Do you require anything further at this time? No. Thank you very much. Thank you. Your Honors, have a great afternoon, rest of the day. Once I hang up, Cassidy will come on and let you know that you will be the only ones on the line. Okay? Okay. Thank you. Thank you. Thank you.